**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
SPOKANE DIVISION**

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1015, | ) ) ) | |
| Plaintiff, | ) ) | No. 17-cv- |
| v. | ) ) | |
| SPOKANE TRANSIT AUTHORITY, | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT**

**Introduction**

1.     Local 1015 of the Amalgamated Transit Union (ATU) brings this action pursuant to 42 U.S.C. § 1983 to bar defendant Spokane Transit Authority (STA) from acting in violation of the First Amendment to deny Local 1015 from placing advertisements on STA buses simply because it is a union. The content restrictions imposed by the Defendants under color of state law are unreasonable in light of the purpose served by the forum and inappropriately viewpoint-based and are therefore unconstitutional both on their face and as applied in this case.

**Parties**

2.     Plaintiff Local 1015 is the sole and exclusive bargaining representative of all non-supervisory employees of the Spokane Transit Authority.

3.     Defendant Spokane Transit Authority is a public transportation benefit authority, a type of municipal corporation created pursuant to RCW 36.57A.030, which operates public transportation services in Spokane County.

1

**Jurisdiction and Venue**

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, namely the First Amendment and 42 U.S.C. § 1983.

5.      Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391 because the defendant is located in this district and all the events and omissions giving rise to the claims occurred in this district.

**Facts**

6.      STA has a "Commercial Advertising Policy" (hereinafter "Policy") that purports to govern decisions about whether advertising will be approved for display on STA buses, which is attached hereto as Exhibit A.

7.      STA's Policy delegates responsibility for daily administration of this policy to an "Advertising Contractor." Ex. A at 4, § III.A.

8.      From 2009 until on or around November 9, 2016, STA's Advertising Contractor was ooh Media LLC.

9.      The Policy permits two types of advertising content for display on STA buses, "Commercial and Promotional Advertising" and "Public Service Announcements." Ex. A at 1-2, § II.A.

10.     The Policy defines "Commercial and Promotional Advertising" as advertising that "promotes or solicits the sale, rental, distribution or availability of goods, services, food, entertainment, events, programs, transaction, donations, products or property for commercial purposes or more generally promotes an entity that engages in such activity." Ex. A at 1, § II.A.1.

2

11.     The Policy defines "Public Service Announcements" or "PSAs" as advertisements that meet three criteria. Ex. A at 2, § II.A.2.

12.     First, the sponsor of the PSA "must be a government entity or a nonprofit corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code." Ex. A at 2, § II.A.2.a.

13.     Second, the "PSA must be directed to the general public or a significant segment of the public and relate to: i. Prevention or treatment of illness; ii. Promotion of safety, health or personal well-being; iii. Provision of family or child social services; iv. Solicitation by broad-based employee contribution campaigns which provide funds to multiple charitable organizations (.e.g. United Way); or v. Provision of services and programs that support low income citizens or persons of disability." Ex. A at 2, § II.A.2.b.

14.     Third, a PSA "may not include a commercial message or mention a festival, show, sporting event, concert, lecture, or event for which an admission fee is charged." Ex. A at 2, § II.A.2.c.

15.     The Policy also sets forth a series of categories of "Prohibited Advertising Content," which prohibits ads containing, among other things, deceptive commercial speech, political speech, the promotion of unlawful goods or services, and obscenity or nudity. Ex. A at 2-4, § II.B.

16.     Plaintiff and other unions have placed advertisements on STA's buses in the past.

17.     In 2000, Plaintiff joined a regional council of unions and posted an advertisement on STA buses promoting organized labor.

18.     For years, up to and including early 2016, Local 1439 of the United Food and Commercial Workers (UFCW) union has posted ads on STA buses promoting the services of the

3

union and informing the public about workers' rights to organize for their mutual aid and protection.

19.    In fact, in or around 2010, UFCW Local 1439 ran ads on STA buses that made an appeal to the public to join the union in a campaign against a specific employer.

20.    In early 2016, UFCW Local 1439 ran and ad encouraging workers to "GET UNITED!" and unionize.

21.    In 2016, for the first time, STA's agent, ooh Media LLC, informed UFCW Local 1439 that it was not allowed to post ads on buses because it was a union and removed the ads that UFCW was already running at the time.

22.    Upon information and belief, based on a published account of an interview with STA's CEO, Susan Meyer, a copy of which is attached hereto as Exhibit B, STA has since stated that the ads were disallowed because it encouraged unionization.

23.    On or about August 9, Plaintiff contacted ooh Media regarding its desire to place advertisements on STA buses promoting the services that Plaintiff provides for its members and informing the public about workers' rights to organize for their mutual aid and protection.

24.    On or about August 10, ooh Media informed Plaintiff that it would not be permitted to display its ads on STA buses because the proposed ads promoted unions and were therefore not "for a commercial purpose."

25.    Specifically, ooh Media stated to Plaintiff, "Your union would be a 501(c)(5) and as such your message is not for commercial purposes," apparently referencing Plaintiff's status as a labor organization exempt from taxation under 26 U.S.C. § 501(c)(5).

26.    Plaintiff's proposed ads do not fall into any of the categories of "Prohibited Advertising Content."

4

27.    ooh Media did not take the position that Plaintiff's proposed ads fell into any of the categories of "Prohibited Advertising Content."

28.    Rather, ooh Media, acting on behalf of and as the agent for STA, took the position that Plaintiff's ads did not fall within either of the categories of "Permitted Advertising Content."

29.    After ooh Media rejected Local 1015's ad, the Local contacted STA directly, informed STA that its policy of denying unions the right to advertise was a violation of the First Amendment, and stated its intention to file the instant lawsuit if STA did not allow it to run its ads.

30.    STA claimed that ooh Media had been wrong to suggest that its policy barred advertisement by unions.

31.    Despite claiming that the policy did not bar unions from advertising however, STA, through counsel, stated that ads promoting Local 1015 and seeking to get others organized "do[] not appear…to be commercial advertising promoting a commercial service or product" and agreed with ooh Media that the promotion of a union "is not a commercial purpose, nor does it promote an entity that engages in such activity."

32.    On September 15, 2016, the parties had a meeting to discuss the possibility of Local 1015 running ads on STA buses.

33.    At the meeting, STA suggested that Local 1015 submit ad copy so that ooh Media could base its decision on a proposed ad.

34.    However, while continuing to claim that unions were not barred outright from advertising under the policy, STA also continued to take the position that the promotion of a union was not commercial advertising and suggested for the first time at the meeting that an ad promoting a union might constitute "Prohibited Advertising Content" because it would

"express[] or advocate[e] an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues."

35.     On or about September 27, 2016, pursuant to STA's suggestion that Local 1015 propose an ad for review, Local 1015 provided ooh Media with a rough draft of a proposed ad, which is attached hereto as Exhibit C.

36.     The ad contained a copy of Local 1015's logo and stated, "Do you drive: Uber? Lyft? Charter Bus? School Bus? You have the Right to Organize! Contact ATU 1015 Today at 509-325-2955." Ex. C.

37.     Though Local 1015 submitted the ad on or about September 27, 2016, and followed up on numerous occasions with ooh Media, it had received no response as of November 7, 2016.

38.     So, on November 7, 2016, through counsel, Local 1015 contacted STA to inquire about the reason for the delay and whether its ad would be accepted.

39.     On November 9, 2016, STA responded by stating that STA had terminated its contract with ooh Media and that, as a result, no further advertising would be sold or accepted by STA until it hired a new Advertising Contractor sometime in 2017.

40.     STA is continuing to run ads that it had already contracted to run as of November 9, 2016, but is not accepting any new ads.

41.     On November 23, 2016, the Inlander published a story chronicling the history of STA's relationship with ooh Media and the reasons for STA's termination of the contract. The story was based in part on an interview by the author of STA CEO Susan Meyer. *See* Ex. B.

42. In the article, Meyer is quoted and paraphrased as stating that the decision to terminate ooh Media's contract was ultimately triggered by ooh Media's decision that Local 1015's ads were acceptable under STA's Advertising Policy.

43. STA disagreed with ooh Media, believing that Local 1015's proposed ad was not permitted by the Advertising Policy.

44. The article also indicates that STA previously cancelled UFCW Local 1439's ad because by promoting a union it took a position on a matter of public controversy.

45. The article states that STA expects to hire a new Advertising Contractor sometime in mid-2017.

46. As a result of STA's actions in first denying Local 1015 the opportunity to advertise through its agent, ooh Media, and then through its delay and termination of ooh Media's contract, STA has barred Local 1015 from running its ads on STA buses since August 2016.

47. By opening the sides of its buses to speakers other than the government itself, STA created a public forum. Though it has temporarily closed that forum due to its termination of ooh Media's contract, it plans to reopen that forum in 2017.

48. Because any new Advertising Contractor hired in 2017 will be subject to the same Policy, and STA interprets its policy to prohibit Local 1015's ads, Local 1015 will be similarly prohibited from advertising as soon as STA reopens the forum.

49. By failing to consistently enforce the Policy in the past, including by formerly allowing unions to post ads, STA has opened a designated public forum where any content-based restrictions are subject to strict scrutiny.

50. Alternatively, if STA has not opened a designated public forum, it has opened a limited public forum.

51. Because STA has previously allowed unions to post ads in this forum, the exclusion of Local 1015's advertisements in this case is not a reasonable content-based restriction, but rather an arbitrary restriction.

52. Moreover, even if there were no history of union ads on STA buses in the past, the ads that ATU Local 1015 wishes to place on STA's buses plainly fall within the Policy's definition of "Commercial and Promotional Advertising," as they "promote[]…the …availability of…services," namely the services of organization and representation that ATU provides for its members.

53. By law, the services that a union must provide are organization and representation of workers. If Local 1015 is barred from promoting these services, it is effectively barred from promoting any services.

54. Plaintiff's ads are for "commercial purposes" under any reasonable definition of the term, as they seek to generate revenue for Plaintiff in the form of dues, to promote better wages and working conditions for workers engaged in commerce, and to impact labor-management relations in a public commercial enterprise.

55. STA's rejection of Plaintiff's ads is therefore arbitrary and unreasonable as Plaintiff's ads comply with the Policy.

56. To the extent STA interprets the Policy to exclude only commercial and promotional advertising that promotes the availability of the services of a union, STA has engaged in unlawful viewpoint discrimination.

57.     Moreover, even if the exclusion of the promotion of the services of a labor organization were not viewpoint discrimination, it is a content-based restriction that is not reasonably related to the purposes of the forum, which is to provide bus services to the public.

58.     Alternatively, if Defendants are correct that Plaintiff's ads are non-commercial because Plaintiff is a labor organization, Plaintiff's ads therefore meet two of the three criteria that the Policy uses to define "Public Service Announcements" as they do not contain a commercial message and they are "directed to the general public or a significant segment of the public and relate to…[the p]romotion of safety, health or personal well-being…and [the p]rovision of services and programs that support low income citizens."

59.     The only criterion that excludes Plaintiff's ads from the PSAs category is the requirement that Plaintiff be a government entity or a "nonprofit corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code."

60.     This policy constitutes an unlawful viewpoint-based restriction on speech in a public forum by allowing the promotion of charitable, religious, and educational public services while prohibiting the promotion of labor-related public services.

61.     There is no reasonable basis for allowing PSAs from organizations that are exempt from taxation under § 501(c)(3) while prohibiting PSAs from organizations that are exempt from taxation under § 501(c)(5), and certainly no basis that is reasonably related to the purposes of the forum, namely the provision of public transportation.

## COUNT I
### 42 U.S.C. § 1983
### Violation of First and Fourteenth Amendments

62.     By the acts set forth above, STA, by and through ooh Media LLC, has previously opened the ad space on STA buses up as a public forum where members of the public may promote or advertise the availability of services or make public service announcements.

63.    By prohibiting Plaintiff from placing ads promoting the availability of its services and/or making public service announcements about workers' rights to organize, the STA has imposed an unreasonable content-based restriction on Plaintiff's speech, in violation of its rights under the First Amendment as it is incorporated by the Fourteenth Amendment to apply to the State of Washington and its instrumentalities.

64.    By prohibiting only labor organizations from placing ads promoting the availability of their services and/or making public service announcements, the STA has engaged in viewpoint discrimination in violation of Plaintiff's rights under the First Amendment as it is incorporated by the Fourteenth Amendment to apply to the State of Washington and its instrumentalities.

65.    STA has explicitly imposed this prohibition as a matter of policy.

66.    STA has done so under color of state law.

WHEREFORE, Plaintiff respectfully prays that the Court:

A.  Enter judgment in favor of Plaintiff and against Defendant;

B.  Declare that when STA begins accepting ads again, Plaintiff may place ads on STA buses that promote the availability of services or that contain public service announcements;

C.  Preliminarily and permanently enjoin Defendant from prohibiting Plaintiff to place such ads on buses; and

D.  Grant Plaintiff its attorneys' fees and costs.

Dated: February 3, 2017

By:     s/ Steven A. Crumb     
            One of Plaintiff's Attorneys

Steven A. Crumb
127 E Augusta Ave Ste 200
Spokane, WA  99207-2469
509-315-4238

Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
*Seeking pro hac vice admission*