UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1015,<br><br>    Plaintiff,<br><br>v.<br><br>SPOKANE TRANSIT AUTHORITY,<br><br>    Defendant. | NO. 2:17-CV-00053-JLQ<br><br>ORDER AND MEMORANDUM OPINION RE: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |

        BEFORE THE COURT is the Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 12). Plaintiff filed a Response. (ECF No. 15). Defendant filed a Reply. (ECF No. 18). Plaintiff filed a Sur-Response (ECF No. 20) pursuant to the court's direction to address the Ninth Circuit's opinion in *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017). The Motion was submitted for decision without oral argument. This Order memorializes the court's ruling.

## I.    Background

        As this is a Motion to Dismiss, the facts are taken from the allegations in the Complaint.

        Plaintiff Amalgamated Transit Union Local 1015 ("Plaintiff" or "ATU") is the sole and exclusive bargaining representative of all non-supervisory employees of the Spokane Transit Authority. (ECF No. 1 at ¶2).

        Defendant Spokane Transit Authority ("Defendant" or "STA") is a public transportation benefit authority, a type of municipal corporation created pursuant to RCW 36.57A.030, which operates public transportation services in Spokane County. (ECF No.

1 at ¶3).

STA has a "Commercial Advertising Policy" ("Policy") setting forth the criteria by which advertising will be approved for display on STA buses. (ECF No. 1 at ¶6). The Policy delegates daily administration of the policy to an "Advertising Contractor." (ECF No. 1 at ¶7); (ECF No. 1-1 at §III.A). From 2009 to November 9, 2016, the Advertising Contractor was ooh Media LLC. (ECF No. 1 at ¶8).

The Policy permits two types of advertising content for display on STA buses: (1) "Commercial and Promotional Advertising"; and (2) "Public Service Announcements." (ECF No. 1 at ¶9); (ECF No. 1-1 at § II.A). "Commercial and Promotional Advertising" is defined by the Policy as advertising that "promotes or solicits the sale, rental, distribution or availability of goods, services, food, entertainment, events, programs, transaction, donations, products or property for commercial purposes or more generally promotes an entity that engages in such activity." (ECF No. 1-1 at § II.A.1).

To qualify as a "Public Service Announcements" ("PSA"), proposed advertisements must meet three criteria: (1) the sponsor "must be a government entity or a nonprofit corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code"; (2) the "PSA must be directed to the general public or a significant segment of the public and relate to: i. Prevention or treatment of illness; ii. Promotion of safety, health or personal well-being; iii. Provision of family or child social services; iv. Solicitation by broad-based employee contribution campaigns which provide funds to multiple charitable organizations (e.g. United Way); or v. Provision of services and programs that support low income citizens or persons of disability"; and (3) "may not include a commercial message or mention a festival, show, sporting event, concert, lecture, or event for which an admission fee is charged." (ECF No. 1-1 at § II.A.2.c).

The Policy also lists categories of "Prohibited Advertising Content" including ads containing deceptive commercial speech, political speech, the promotion of unlawful goods or services, or "expressing or advocating an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues." (ECF No.

1-1 at § II.B).

Plaintiff and other unions have placed advertisements on STA buses in the past. (ECF No. 1 at ¶16). In 2000, Plaintiff, along with a regional council of unions, posted an advertisement promoting organized labor on STA buses. (ECF No. 1 at ¶17). The United Food and Commercial Workers Local 1439 posted advertisements on STA buses in 2010 appealing the public to join the union in a campaign against a specific employer and in early 2016 encouraging workers to "GET UNITED!" and unionize. (ECF No. 1 at ¶¶18-20).

On August 9, 2016, Plaintiff contacted ooh Media about placing advertisements on STA buses promoting the services Plaintiff provides for its members and informing the public about workers' rights to organize. (ECF No. 1 at ¶23). On August 10, 2016, ooh Media informed Plaintiff it would not be permitted to display ads on STA buses because "[y]our union would be a 501(c)(5) and as such your message is not for commercial purposes." (ECF No. 1 at ¶25).

On September 6, 2016, Plaintiff contacted STA's attorney about the rejection and threatened to file a lawsuit if STA did not allow it to run its ads. (ECF No. 1 at ¶29); (ECF No. 13-1). On September 8, 2016, counsel for STA responded stating there was an "unfortunate miscommunication - or perhaps lack of clear communication due to the email forum - between ooh Media and ATU Local 1015." (ECF No. 13-1 at 7). Counsel stated an advertisement "promoting our union and getting others organized" "does not appear to me to be commercial advertising promoting a commercial service or product." (ECF No. 13-1 at 7). Counsel stated ooh Media's reference to Plaintiff's tax status as governing whether the content of an advertisement was "Commercial and Promotional Advertising" was "not correct at all." (ECF No. 13-1 at 7). Counsel also stated "I am confident that STA would agree to facilitate a meeting to get the miscommunication cleared up and to allow a chance for ATU Local 1015 to present [an] ad copy (it doesn't need to be professionally rendered) to be fully evaluated by ooh Media to determine if it is indeed Commercial or Promotional Advertising, or contains Prohibited Advertising

Content." (ECF No. 13-1 at 7-8).

On September 15, 2016, STA and Plaintiff met to discuss the possibility of running advertisements on STA buses. (ECF No. 1 at ¶32). During the meeting, STA suggested Plaintiff submit an ad copy so ooh Media could base its decision on a proposed ad. (ECF No. 1 at ¶33). STA also stated promoting a union was not commercial advertising and suggested such advertising might constitute "Prohibited Advertising Content" because it would "express[] or advocate[] an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues." (ECF No. 1 at ¶34); *see* (ECF No. 1-1 at § II.B.(13)).

On September 27, 2016, Plaintiff provided ooh Media a rough draft of a proposed advertisement. (ECF No. 1 at ¶35); (ECF No. 1-3). The advertisement contained a copy of Plaintiff's logo and stated "Do you drive: Uber? Lyft? Charter Bus? School Bus? You have the Right to Organize! Contact ATU 1015 Today at 509-325-2955." (ECF No. 1-3). Plaintiff received no response from ooh Media as of November 7, 2016. (ECF No. 1 at ¶37). On November 7, 2016, Plaintiff contacted STA about the reason for the delay and whether its advertisement would be accepted. (ECF No. 1 at ¶38).

On November 9, 2016, STA responded stating it had terminated its contract with ooh Media and as a result, no further advertising would be sold or accepted by STA until it hired a new Advertising Contractor in 2017. (ECF No. 1 at ¶39). STA continues to run ads already contracted to run as of November 9, 2016, but is not accepting any new ads. (ECF No. 1 at ¶40).

On February 6, 2017, Plaintiff filed the Complaint seeking declaratory and injunctive relief under 42 U.S.C. § 1983 to prevent STA from "acting in violation of the First Amendment to deny Local 1015 from placing advertisements on STA buses simply because it is a union." (ECF No. 1 at 1).

On March 6, 2017, STA filed the instant Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6). (ECF No. 12).

## II.    Discussion

To survive a motion to dismiss, the pleading must allege sufficient facts, which, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "the court accepts the facts alleged in the complaint as true." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). However, a claim may be dismissed "based on the lack of a cognizable legal theory." (*Id.*). While a court may not generally consider evidence outside of the complaint in a Fed.R.Civ.P. 12(b)(6) motion, the court may consider "material which is properly submitted as part of the complaint" and documents the complaint "necessarily relies" on and whose authenticity "is not contested." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)).

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 352 (9th Cir. 1996). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." (*Id.*). In a facial attack, the court assumes all allegations to be true and draws all reasonable inferences in the non-moving party's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### A.    Facial Challenge

"Unions may sue under 42 U.S.C. § 1983 as persons deprived of their rights secured by the Constitution and laws [citation omitted], and it has been implicitly

recognized that protected First Amendment rights flow to unions as well as to their members and organizers." *Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974). Bus advertising programs constitute limited public forums. *See Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 498 (9ᵗʰ Cir. 2015). As such, any speaker-based or subject-matter-based limitations must be "reasonable and viewpoint neutral." (*Id.* at 499). Defendant's Motion does not address any of this authority or argue Plaintiff cannot bring a First Amendment claim. Rather, Defendant asserts the allegations in the Complaint fail to plausibly show the Policy categorically bars unions from advertising.

STA argues the facial challenge to the Policy is "wholly implausible" because: (1) the Policy as written does not categorically prohibit union advertisements; (2) despite ooh Media telling Plaintiff union advertisements are not permissible under the Policy, STA's attorney later clarified the Policy does allow unions to advertise; and (3) STA invited Plaintiff to submit a proposed ad. (ECF No. 12 at 10-11). STA asserts the allegations in the Complaint fail to plausibly show STA categorically prohibits unions from advertising.

STA correctly points out the Policy does not explicitly address unions. However, Plaintiff alleges that according to STA's Policy, unions cannot advertise "public service announcements" because they are not government entities or 501(c)(3) organizations. *See* (ECF No. 1-1 at § II.A.2.a). Additionally, the Policy defines "Commercial and Promotional Advertising" to include "promot[ing] or solicit[ing] the ... distribution or availability of goods, **services**, ... or more generally **promotes an entity that engages in such activity**." (ECF No. 1-1 at § II.A.1) (emphasis added). Although encouraging unionization might reasonably be considered "Commercial and Promotional Advertising," the Complaint alleges ooh Media interpreted the Policy as prohibiting union advertisements promoting unionization because unions are non-profit organizations. (ECF No. 1 at ¶¶24-25). Such an interpretation would effectively bar unions from making any advertisements.

STA argues it refuted ooh Media's interpretation, through counsel. While counsel

repudiated ooh Media's reasoning that Plaintiff's non-profit status made its message non-commercial, counsel never refuted the end result. Specifically, counsel for STA stated advertisements "promoting our union and getting others organized" "does not appear to me to be commercial advertising promoting a commercial service or product" and "I think I would have come to the same conclusion [as ooh Media]." (ECF No. 13-1 at 4). Counsel provided no explanation for why she would come to the same conclusion.

If an advertisement encouraging unionization and requesting people to contact Plaintiff is not commercial or promotional, then it is difficult to imagine any advertisement a union might propose that would be "Commercial and Promotional" under this interpretation of the Policy. Additionally, it is unclear how encouraging workers to join its union does not fall under "Commercial and Promotional Advertising" of services and promoting an entity that engages in such activity. While the Policy does not use the word "union" anywhere, the allegations in the Complaint plausibly demonstrate an interpretation of the Policy which bars unions from advertising and bases this on the fact they are unions.

Additionally, counsel was speaking on behalf of STA in her email to Plaintiff, and there are no allegations STA ever refuted counsel's conclusion or provided any basis for the conclusion. It is alleged, supported by a newspaper article, STA's CEO stated the reason for terminating ooh Media contract was due to ooh Media's decision to run Plaintiff's advertisement which STA believed was not permitted under its Policy. *See* (ECF No. 1 at ¶¶41-44); (ECF No. 1-2). While the article is hearsay, the article supports the allegations, and to the extent this court's inquiry is whether the allegations are plausible, the article supports the plausibility of the claim that STA interprets the Policy to not allow unions to post commercial messages solely because they are unions.

Lastly, the argument of Defendant asserting the invitation to Plaintiff to submit an advertisement makes the Plaintiff's facial challenge "wholly implausible" is not well-taken. It is not difficult to find plausible reasons for STA to invite Plaintiff to submit an advertisement it had no intention of accepting and engage in what would be a fruitless

endeavor. The offer itself may be pretext, so STA can claim (as it has) it does not categorically bar unions from placing advertisements. Additionally, having Plaintiff submit an advertisement could be intended to delay Plaintiff from filing this lawsuit, which actually happened.

The Complaint plausibly alleges STA's Policy prevents unions from placing advertisements. Based on the interpretation of the Policy and restrictions on public service announcements, the Complaint alleges unions cannot advertise on STA buses. STA does not suggest, nor does the Complaint provide any example of an advertisement a union might run that would comply with the Policy. Nor does STA explain how it distinguishes advertisements encouraging workers to join Plaintiff as not being "Commercial and Promotional Advertising" as opposed to other commercial advertisements by non-union businesses. Additionally, the Complaint alleges STA has suggested advertisements promoting unionization may be a "Public Issue" which is listed in the Policy as "Prohibited Advertising Content." (ECF No. 1 at ¶34). While it is unnecessary to address the issue further in this Order, these allegations provide an additional way STA allegedly interprets the Policy to prevent any union advertisements. For all of the above reasons, STA's Motion to Dismiss the facial challenge is Denied.

**B.    As-Applied Challenge**

Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003). A claim is not ripe for adjudication if "the injury is speculative and may never occur." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (citation omitted). The Ninth Circuit applies "the requirements of ripeness and standing less stringently in the context of First Amendment

claims." (*Id.* at 1058).

"[A] plaintiff has standing to vindicate his First Amendment rights through a facial challenge when he 'argue[s] that an ordinance ... impermissibly restricts a protected activity,' and such facial challenges may be paired with as-applied challenges." *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033-34 (9th Cir. 2006) (brackets in original)).

STA argues Plaintiff's as-applied challenge is not ripe because the Complaint establishes STA has not made any decision to accept or reject a proposed ad submitted by Plaintiff. STA's argument is a facial attack on the Complaint, and as such, the allegations in the Complaint are taken as true. *See Meyer*, 373 F.3d at 1039.

The Complaint alleges Plaintiff submitted a proposed advertisement to ooh Media on September 27, 2016. (ECF No. 1 at ¶35). Upon hearing no response, Plaintiff contacted STA on November 9, 2016, and learned ooh Media's contract had been terminated and no new advertising would be sold or accepted until a new Advertising Contractor was hired. (ECF No. 1 at ¶39). The alleged response from STA suggests no decision had been made on Plaintiff's proposed advertisement.

However, the Complaint also alleges that on November 23, 2016, *The Inlander* published a story containing quotations from STA CEO Susan Meyer addressing the reasons for terminating the contract with ooh Media. (ECF No. 1 at ¶41); (ECF No. 1-2). Of particular relevance to this matter, the *Inlander* article states ooh Media told STA it believed Plaintiff's advertisement was "fine," which to STA was "the last straw" and prompted termination of the contract. (ECF No. 1-2 at 3). These allegations, based on the *Inlander* article, suggest STA terminated ooh Media to prevent Plaintiff from advertising.

STA's Motion ignores the allegations based on the *Inlander* article. While the article is hearsay, the fact the Complaint relies on hearsay is immaterial in a motion to dismiss. *See Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 378 (W.D. N.Y. 2012) (holding allegations based on hearsay may considered by the court in a motion to

dismiss). As the *Campenella* court rightly observed, punishing plaintiffs for "pleading too much" while "a complaint pleading unattributed facts could survive a motion to dismiss" is an absurd result. *See* (*id*.). In this matter, Plaintiff could have stated "upon information and belief" to avoid relying explicitly on hearsay. However, it should not punished for accurately attributing its source of belief to the *Inlander* article.

While the *Inlander* article would not be admissible evidence in a motion for summary judgment, the court will consider all well-pleaded allegations, including hearsay in the current proceedings. Accepting those allegations as true for the purposes of this Motion, STA has made a decision to prevent Plaintiff from running a proposed advertisement based on its alleged interpretation of the Policy to not allow unions to run any advertisement. These hearsay allegations are consistent with other, non-hearsay allegations contained in the Complaint.

Plaintiff has alleged, and STA has submitted a copy of the email wherein counsel for STA stated her position that union advertisements supporting unionization are not commercial or promotional advertising as defined in the Policy. The same email also confirms ooh Media told Plaintiff the same, albeit for different reasons. These allegations all support the claim STA has denied Plaintiff the ability to advertise on its buses. There are no allegations STA refuted this interpretation or provided any rationale for its interpretation.

For all of the above reasons, the court finds Plaintiff's as-applied challenge is ripe.

## III.  Conclusion

The facial challenge to STA's Policy alleges an interpretation by STA's Advertising Contractor and STA's counsel which effectively forbids unions from advertising for no apparent reason other than the fact they are unions. There are no allegations STA refuted this interpretation. This claim is plausible as alleged. The Complaint presents a ripe as-applied challenge because the allegations, including those relying on the *Inlander* article, infer STA rejected Plaintiff's proposed advertisement by terminating ooh Media when it had decided to run the advertisement.

**IT IS HEREBY ORDERED**:

The Motion to Dismiss (ECF No. 12) is **DENIED**.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated May 16, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE