UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1015,<br><br>       Plaintiff,<br><br>       v.<br><br>SPOKANE TRANSIT AUTHORITY,<br><br>       Defendant. | NO. 2:17-CV-00053-JLQ<br><br>MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW RE: BENCH TRIAL |

## I.    Introduction

On February 6, 2017, Plaintiff, Amalgamated Transit Union - Local 1015 ("Plaintiff" or "ATU") filed the Complaint alleging the Defendant, Spokane Transit Authority ("Defendant" or "STA") violated ATU's constitutional rights by refusing to allow it to run an advertisement stating drivers of various entities have the right to organize. (ECF No. 1). On May 16, 2017, the court denied STA's Motion to Dismiss. (ECF No. 28). On May 25, 2017, the court granted the parties' joint request for a bench trial on an expedited basis due to the minimally disputed facts. (ECF No. 31).

On June 27, 2017, the court held the bench trial in this matter. Plaintiff was represented by Steven Crumb and Sean Morales-Doyle. James McPhee and John Drake appeared on behalf of the Defendant. At the conclusion of the bench trial, the court ordered the parties to submit briefing to address the issues raised at trial. On July 21, 2017, the parties submitted briefs and on August 4, 2017, submitted reply briefs. *See* (ECF No. 42); (ECF No. 44); (ECF No. 46); (ECF No. 47). The parties also submitted proposed Findings of Fact and Conclusions of Law. *See* (ECF No. 43); (ECF No. 45).

This Order memorializes the court's Findings of Fact and Conclusions of Law in this matter.

## II.    Findings of Fact[1]

ATU is a nonprofit union representing all transit operators, maintenance, clerical, and customer service employees at STA, as well as drivers for STA's para-transit program. (ECF No. 41 at 43:8-15, 22-25). ATU provides collective bargaining services, contract enforcement, and assistance in organizing new members. (ECF No. 41 at 43:17-18).

STA provides public bus transportation to the Spokane region. (ECF No. 41 at 112:7-8). STA had an advertising program to generate non-tax revenue. (ECF No. 41 at 112:13-14). To implement the advertising program, STA, at all relevant times, had a "Commercial Advertising Policy" ("Policy") setting forth the criteria by which advertising would be approved for display on STA buses. (ECF No. 41 at 112:20-21); (Ex. 1). The Policy delegated daily administration of the policy to an "Advertising Contractor." (Ex. 1 at §III.A). Until November 7, 2016, the Advertising Contractor was Ooh Media LLC. (ECF No. 41 at 166:22-25).

The Policy permitted two types of advertising content for display on STA buses: (1) "Commercial and Promotional Advertising"; and (2) "Public Service Announcements." (Ex. 1 at ¶9); (Ex. 1 at § II.A). "Commercial and Promotional Advertising" is defined by the Policy as advertising that "promotes or solicits the sale, rental, distribution or availability of goods, services, food, entertainment, events, programs, transaction, donations, products or property for commercial purposes or more generally promotes an entity that engages in such activity." (Ex. 1 at § II.A.1).

---

[1] To the extent the Discussion section of this Memorandum Opinion contains mixed Findings Of Fact and Conclusions Of Law, those findings are deemed part of the court's Findings Of Fact and Conclusions Of Law.

ORDER - 2

To qualify as a "Public Service Announcements" ("PSA"), proposed advertisements were required to meet three criteria: (1) the sponsor "must be a government entity or a nonprofit corporation that is exempt from taxation under § 501(c)(3) of the Internal Revenue Code"; (2) the "PSA must be directed to the general public or a significant segment of the public and relate to: i. Prevention or treatment of illness; ii. Promotion of safety, health or personal well-being; iii. Provision of family or child social services; iv. Solicitation by broad-based employee contribution campaigns which provide funds to multiple charitable organizations (e.g. United Way); or v. Provision of services and programs that support low income citizens or persons of disability"; and (3) "may not include a commercial message or mention a festival, show, sporting event, concert, lecture, or event for which an admission fee is charged." (Ex. 1 at § II.A.2.c).

The Policy also listed categories of "Prohibited Advertising Content" including ads containing deceptive commercial speech, political speech, the promotion of unlawful goods or services, or "expressing or advocating an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues." (Ex. 1 at § II.B(13)). The "Prohibited Advertising Content" applied equally to both "Commercial and Promotional Advertising" and "Public Service Announcements." (ECF No. 41 at 178:14-22).

If the Advertising Contractor was unable to make a determination whether a proposed advertisement complied with the Policy, the Director of Communications reviewed the advertisement. (ECF No. 41 at 113:23-114:2). If the Director of Communications could not make a decision, the STA CEO made the final decision on a proposed advertisement. (ECF No. 41 at 113:23-114:2). When proposed advertisements came to the CEO, she consulted at times with legal counsel before rendering a decision. (ECF No. 41 at 116:5-8).

ORDER - 3

The prior version of the Policy did not contain prohibitions on "Public Issues." Ex. 501 at 3). Under the prior version of the Policy, the Coalition of Reason ran an advertisement on STA buses stating "Are you good without God? Millions Are." (Ex. 513); (ECF No. 41 at 116:20-117:3). STA received complaints above and beyond normal complaints concerning this advertisement, both before and after the advertisement started appearing on STA buses. (ECF No. 41 at 117:4-6, 120:22-24, 122:15-17, 127:19-23); (Ex. 514a-b); (Ex. 515a-c). The advertisement brought attention that negatively affected STA operations in the form of concerns expressed to STA bus operators who did not want to drive buses with those advertisements and customer service representatives who dealt with the complaints and reactions. (ECF No. 41 at 193:16-24, 194:7-11).

Also under the old Policy, an advertisement ran on STA buses stating "Fred Meyer Firing workers for one honest mistake is JUST WRONG." (Ex. 511); (ECF No. 41 at 132:10-21). STA received complaints about the advertisement. (Ex. 512a); (ECF No. 41 at 132:23-25, 133:8-18, 194:23-195:5). The complaints raised concern with STA because the complaints suggested STA used taxpayer funded buses to promote messages from particular viewpoints. (ECF No. 41 at 134:15-22). The complaints prompted an internal discussion within STA to determine if there was anything it could do about the complained of advertisements. (Ex. 512b); (ECF No. 41 at 134:25-137:1).

Under the former version of the Policy, another advertisement campaign ran which was critical of Albertsons and encouraged shoppers to shop at Rosauers. (Ex. 508); (ECF No. 41 at 137:15-17). STA received complaints about the advertising campaign. (Ex. 509); (ECF No. 41 at 137:18-19, 138:7-21).

An advertisement also ran under the old policy for Busty's Top Espresso, a bikini espresso. (Ex. 516); (ECF No. 41 at 139:16-23). STA and counsel reviewed the original proposed advertisement and it was rejected. (ECF No. 41 at 141:18-21). Local media interviewed STA CEO E. Susan Meyer regarding the Busty's Top Espresso advertisements and complaints received by the local media. (Ex. 517b); (ECF No. 41 at

140:21-141:15). STA also received complaints regarding this advertisement. (Ex. 517a); (ECF No. 41 at 140:10-17).

STA spent a significant amount of time responding to complaints under the former policy. (ECF No. 41 at 142:13-24). The complaints generated STA concerns about the impact on bus operators and possible funding problems from voter backlash. (ECF No. 41 at 144:6-19). Based on these issues, in late 2012, STA revised the Policy to its current form with review of legal counsel and the Communications Manager. (ECF No. 41 at 144:24-145:13); (Ex. 501, 503). On December 5, 2012, the Performance Monitoring and External Relations Committee, composed of the STA CEO, a labor representative, and other community members, reviewed the proposed changes, made its own changes, and passed the Policy. (ECF No. 41 at 145:14-149:10, 199:2-200:19). On December 20, 2012, the STA Board of Directors met, discussed the proposed changes to the Policy, and passed it unanimously. (Ex. 503 at 2-3); (ECF No. 41 at 149:15-151:21, 200:20-201:4).

The Board has not issued guidance as to what constitutes a matter of public debate or how to interpret the "Public Issue" portion of the Policy. (ECF No. 41 at 186:3-5). STA interprets the "Public Issue" to constitute "subjects on buses that would create a negative impression of the organization that would be hard on our employees and hard on the organization." (ECF No. 41 at 187:1-11). Under the current Policy, STA has not received complaints over advertisements run on its buses. (ECF No. 41 at 153:11-13).

In January 2013, the Seventh Day Adventist Church of Spokane submitted a proposed series of advertisements for STA buses stating: "Jesus Cares About Your Future," "You Matter to Jesus," and "Jesus Head of Lost and Found." (Ex. 520); (ECF No. 41 at 155:19-156:3, 157:10-16); (Ex. 522-A). The proposed advertisements were rejected because they promoted a religious message that was prohibited as a "Public Issue" under the revised Policy. (ECF No. 41 at 181:1-7). This prompted a public records request and letter from the Church as to why the advertisements were rejected. (Ex. 521-A); (ECF No. 41 at 156:12-23). STA's response explained the Policy had been changed,

the proposed advertisements which were allowed under the old Policy were not allowed under the revised Policy, and attached a copy of the current Policy. (Ex. 522-A); (ECF No. 41 at 157:4-16, 158:3-8). STA worked with the Church on revising the proposed advertisements to comply with the Policy. (Ex. 522-C); (ECF No. 41 at 160:2-5). The advertisements accepted by STA stated "YOU MATTER TO SOMEONE," "SOMEONE CARES ABOUT YOUR FUTURE," and "WE CARE ABOUT YOU." (Ex. 522-C at 1); (ECF No. 41 at 180:8-25). Another advertisement only stated the Church's website. (Ex. 522-C at 1). STA found the advertisements, which promoted the Seventh Day Adventist Church generally, did not take a position on a "Public Issue." (ECF No. 41 at 181:8-16).

In the summer of 2016, Ooh Media approved advertisements by the United Food and Commercial Workers' Union Local 1439 that ran on 11 buses. (ECF No. 41 at 168:1-17, 169:6-12); (Ex. 525). The advertisements all stated "GET UNITED!" with other messages such as "Get the wages, healthcare, and safe working conditions you deserve, for a happier home life," "Stand up & have a voice in your workplace... for better wages, healthcare, and a happier home life!", and "Union workers banding together have better healthcare, wages, working conditions, & a happier home life." (Ex. 525). Each advertisement had the Union's logo, website, and phone number. (Ex. 525). Upon seeing the advertisements on STA buses, CEO Meyer had the advertisements removed because she believed they did not comply with the Policy. (ECF No. 41 at 168:4-169:4). STA had received no complaints about these advertisements. (ECF No. 41 at 176:18-177:3, 206:22-207:4).

On August 8, 2016, ATU President/Business Agent Thomas Leighty contacted Ooh Media about running bus advertisements "promoting our union and getting others organized." (Ex. 3 at 1). On August 9, 2016, Ooh Media responded by including a copy of STA's Policy. (Ex. 3 at 2). Leighty responded, stating he believed ATU could run advertisements promoting ATU, highlighting the Policy's allowance of advertisements promoting the availability of services. (Ex. 3 at 4). On August 10, 2016, Ooh Media

responded, stating "[t]he ads you wish to post are simply solicitation to join a union or organizing. This is not a commercial purpose, nor does it promote an entity that engages in such activity. Your union would be a 501(c)(5) and as such your message is not for commercial purposes." (Ex. 3 at 6).

At some point after this email exchange, ATU's attorney sent a letter to STA threatening legal action if STA did not allow ATU to advertise. (ECF No. 41 at 154:11-13).[2] After exchanging emails with ATU's attorney, counsel for STA sent an email stating she reviewed the emails between Ooh Media and ATU, and stated "[i]t appears to me that ooh [sic] Media probably read the request from ATU Local 1015 as seeking to place ads that would violate its policy and STA's policy, but that the messaging was muddied by a reference to the tax status of Local 1015." (Ex. 5 at 1). Counsel further stated advertisements "promoting our union and getting others organized" "does not appear to me to be commercial advertising promoting a commercial service or product and Ooh Media apparently interpreted the request in the same way (although I haven't spoken with ooh [sic] Media specifically about their thought process and I don't represent the company)." (Ex. 5 at 1). Counsel for STA also stated "I think I would have come to the same conclusion." (Ex. 5 at 1). STA counsel ended the email by suggesting the parties meet to "get the miscommunication [from Ooh Media] cleared up and to allow a chance of ATU Local 1015 to present [an] ad copy ... to be fully evaluated by ooh [sic] Media to determine if it is indeed Commercial or Promotional Advertising, or contains Prohibited Advertising Content." (Ex. 5 at 1).

On September 15, 2016, ATU and STA representatives and counsel met to discuss

---

[2] Defendant's proposed Findings of Fact cite to the ECF filing for some findings, including emails and communication between ATU and STA's attorney. This evidence was not presented at the bench trial and the court does not rely thereon. *See California Offset Printers, Inc. v. Hampton Intern. Communications, Inc.*, 95 F.3d 1156, 1996 WL 490184 at *5 (9th Cir. 1996) (unpublished).

ATU potentially running an advertisement on STA buses. (ECF No. 41 at 98:13-15, 154:17-155:4). At the meeting, STA requested ATU submit an advertisement for its consideration. (ECF No. 41 at 98:16-18, 154:25-155:1).

Thereafter, ATU submitted a proposed advertisement to Ooh Media. The advertisement stated: "Do you drive: Uber? Lyft? Charter Bus? School Bus? You have the Right to Organize! Contact ATU 1015 Today at 509-325-2955." (Ex. 2). The advertisement also had ATU's logo. (Ex. 2). At some point after the advertisement was submitted to Ooh Media, CEO Meyer contacted Ooh Media to get a status report. (ECF No. 41 at 170:17-22). On October 7, 2016, Ooh Media informed Leighty it was "meeting with my content reviewer today to go over the ad. I will let you know later today how things look so we can move forward with the next step." (Ex. 4 at 1). On October 10, 2016, at 10:31 a.m., Ooh Media informed Leighty "Ooh Media is ready to move forward with your ad creative proposed recently." (Ex. 4 at 2). At 6:55 p.m., Ooh Media informed Leighty "[t]hough I believe we were at a point to approve your content, I actually have a delay in final approval as I must meet with STA for their input." (Ex. 4 at 3).

On November 6, 2016, STA terminated its contract with Ooh Media. (ECF No. 41 at 166:21-25). STA made its decision based on "[r]epeated errors in applying the [STA] board's policy to advertisements." (ECF No. 41 at 167:1-5). STA asserted Ooh Media "continued to be unable to distinguish between the policy before 2013 and the policy after 2013." (ECF No. 41 at 167:7-8).

On November 7, 2016, counsel for ATU contacted STA regarding the status of its proposed advertisement because it had not heard anything since the October 7, 2016, email from Ooh Media. (Ex. 6 at 3). On November 9, 2016, counsel for STA informed ATU it had terminated the contract with Ooh Media and "[a]s a result, no further advertising will be sold or accepted by ooh [sic] Media for placement on Spokane Transit buses." (Ex. 6 at 1).

STA claims ATU's proposed advertisement is not allowable under the Policy

because it addresses a "Public Issue" as defined in the Policy. (ECF No. 41 at 160:24-161:6). STA asserts worker organization, representation, and collective bargaining falls under the "right to organize" movement and is a matter of public debate. (ECF No. 41 at 162:4-163:6). STA contends if it runs ATU's proposed advertisement, it would be required to run anti-right to organize and right to work advertisements. (ECF No. 41 at 163:15-24). Regarding right to work advertisements, STA is concerned "for our coach operators and anyone else who deals with the public, to have an ad that would be the topic of highly emotional debate." (ECF No. 41 163:25-164:6).

STA further claims any advertisement making reference to collective bargaining, worker organization, worker representation, or soliciting people to organize is prohibited by the Policy because those constitute a "Public Issue". (ECF No. 41 at 173:15-19, 174:4-8, 178:23-179:5, 181:18-182:8). STA also claims an advertisement promoting ATU generally as an entity is not "a good or a service that's being offered for sale" because ATU does not provide commercial products or services. (ECF No. 41 at 174:12-175:1, 175:14-17, 179:24-180:7). STA believes a union could possibly "advertise a good or a service that they provided that is not organizing." (ECF No. 41 at 179:15-17).

Since at least 2008, STA has had stickers inside all of its buses stating "[t]his vehicle is operated and maintained by union members Amalgamated Transit Union AFL-CIO/CLC" and containing ATU's logo. (Ex. 601); (ECF No. 41 at 104:5-11, 205:17-25). The sticker is located inside the buses alongside STA's membership in the Better Business Bureau. (ECF No. 41 at 206:1-9). STA has never received complaints about these stickers nor do they disrupt operations. (ECF No. 41 at 207:5-19). STA considers these stickers to be "a statement of fact" and believes they do not set "any precedent as to whether we're taking a position on any issue." (ECF No. 41 at 207:9-12).

## III.    Discussion

## A.     Standard of Review

For the purposes of the bench trial, the parties stipulated to the advertising space on STA's buses being a limited public forum. *See* (ECF No. 38 at 9); *Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 498 (9th Cir. 2015). As such, any speaker-based or subject-matter-based limitations must be "reasonable and viewpoint neutral." (*Id*. at 499). In order to be reasonable, a subject-matter or speaker-based exclusion must be (1) "reasonable in light of the purpose served by the forum" and (2) "based on a standard that is definite and objective." (*Id*.) (quotation marks and citation omitted).

The first requirement "focuses on whether the exclusion is consistent with 'limiting [the] forum to activities compatible with the intended purpose of the property.'" (*Id*.) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983)) (brackets in original). "Restrictions on speech that will foreseeably disrupt the intended function of government property have generally been held reasonable in limited public forums." (*Id*. at 500). In the context of Seattle Metro buses, the Ninth Circuit held the intended purpose of the buses "is to provide safe and reliable public transportation. Any speech that will foreseeably result in harm to, disruption of, or interference with the transportation system is, by definition, incompatible with the buses' intended purpose." (*Id*.).

The second requirement requires the court to determine whether the standard established by the government is "sufficiently definite and objective to prevent arbitrary or discriminatory enforcement" by government officials. (*Id*.). The policy at issue must supply a "sufficiently definite and objective benchmark against which to judge" the government's enforcement of the policy. (*Id*.). In contrast, a constitutionally infirm policy is one with a "standardless standard whose application will be immune from meaningful judicial review." (*Id*.) (quotation marks and citation omitted).

In addition to being reasonable, the exclusion must also be viewpoint neutral. (*Id*.

at 501). Viewpoint discrimination occurs when the governmental entity "denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 806 (1985); *see also*, *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). Viewpoint discrimination is "an egregious form of content discrimination" and "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. Viewpoint discrimination "is presumed impermissible when directed against speech otherwise within the forum's limitations." (*Id*. at 830).

STA argues the court should give deference to STA in applying its Policy, citing cases from the First Circuit and Sixth Circuit. *See* (ECF No. 42 at 7-9) (discussing *American Freedom Defense Initiative v. Massachusetts Bay Transportation Authority*, 781 F.3d 571 (1st Cir. 2015), and *American Freedom Defense Initiative v. Suburban Mobility Authority for Regional Transportation*, 698 F.3d 885 (6th Cir. 2012)).

In *Massachusetts Bay*, the First Circuit reviewed the rejection of "support Israel" bus advertisements under a "relatively generous standard" acknowledging "there can be more than one reasonable decision, and an action need not be the most reasonable decision possible in order to be reasonable." 781 F.3d at 588 (quotation marks and citation omitted). The First Circuit upheld the rejection of the advertisements, declining, in a "borderline case, to undertake such review in a manner that would effectively transfer to the federal judiciary the detailed and case-specific application of a facially constitutional public transit authority advertising guideline." (*Id*. at 589). The First Circuit based this conclusion on the fact it was reviewing the denial of a preliminary injunction, because the plaintiff "may still press its constitutional challenge on a more developed record." (*Id*.).

In *Suburban Mobility*, the Sixth Circuit held "[w]henever a rule is applied by an official, a certain amount of discretion must necessarily be exercised." 698 F.3d at 893. The Sixth Circuit further explained:

> On the margins, there may be some difficult determinations, on which reasonable people may disagree. However, eliminating all discretion is not required by *Shuttlesworth* [*v. City of Birmingham*, 394 U.S. 147 (1969)].... While decisionmakers under [the defendant's] policy may at times make incorrect determinations within their limited discretion, these errors are not the sort that *Shuttlesworth* intended to address.

(*Id.*). The Sixth Circuit concluded by finding a bus advertisement policy prohibiting political advertisements, without any accompanying definition of "political," was a "reasonably objective exercise." (*Id.* at 894). The policy in *Suburban Mobility* was distinguishable from a policy prohibiting "controversial" advertisements which had "no articulated definitive standard to determine what was 'controversial.' This discretion allowed for the arbitrary rejection of advertisements based on viewpoint." (*Id.*) (discussing *United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998)).

To the extent these two cases set forth a deferential standard of review, it is only for cases on the margins or close-calls. Those cases do not purport to categorically adopt a deferential standard of review in all cases. The Ninth Circuit has explicitly declined to afford deference to agency determinations in proposed bus advertisements. *Seattle Mideast*, 781 F.3d at 500-01 ("We must independently review the record, without deference to the threat assessment made by County officials, to determine whether it 'show[s] that the asserted risks were real.'") (quoting in part *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 967 (9th Cir. 2002), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The court will follow the Ninth Circuit's directives of reasonableness and viewpoint neutrality.

## B.    Viewpoint Discrimination

ATU argues STA has engaged in viewpoint discrimination because "STA allows ads promoting commercial services that are not pro-union, but prohibits ads promoting

ORDER - 12

commercial services that are pro-union." (ECF No. 44 at 9). ATU further argues "STA actually only applies [its interpretation of "Public Issue"] to unions, while allowing other commercial advertisers to run ads and other nonprofits to run PSAs, regardless of [sic] whether there are those who dislike the services they provide or even their very existence." (ECF No. 47 at 4-5).

STA asserts "ATU has misstated the standard for proving viewpoint discrimination" because ATU must prove "STA opposed or disagreed with its union-organizing mission." (ECF No. 42 at 12). STA argues there is insufficient evidence to show STA disagreed with ATU's message and rejected the advertisement because of it. (ECF No. 42 at 13). STA points to the ATU sticker in all STA buses and CEO Meyer speaking at an ATU regional conference as evidence it has not discriminated against ATU or unions. (ECF No. 42 at 13-14).

In general, "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). The evidence adduced at trial established STA had no intent to silence union speech when it revised the Policy. *See* (ECF No. 41 at 148:14-20); (Ex. 501); (Ex. 503). Additionally, a labor representative took part in the revision process. *See* (ECF No. 41 at 146:16-147:15); (Ex. 501); (Ex. 503). This evidence shows a lack of viewpoint discrimination. *See Members of City Council*, 466 U.S. at 804.

Despite ATU's broad arguments, the only specific advertisements addressed at trial under the revised Policy were the Seventh Day Adventist and United Food and Commercial Workers' Union advertisements. The evidence did not establish whether unions are the only entities affected by the narrow interpretation of the Policy. No details on other advertisements were presented in testimony. There was no evidence presented showing STA has allowed advertisements with explicitly anti-union messages on its buses. The court is left with two isolated instances where union advertisements were

rejected (in the case of ATU) or removed (in the case of United Food and Commercial Workers) and one instance where an advertisement was treated differently. The court finds this evidence does not establish "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction [on speech]." *Rosenberger*, 515 U.S. at 829.

## C.   Type of Challenge

"As a general matter, a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011); *see also*, *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (a facially unconstitutional statute or policy is "unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.") (quotation marks and citation omitted)). A successful facial challenge invalidates the entire law or policy. *Foti*, 146 F.3d at 635.

"A paradigmatic as-applied attack, by contrast, challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific factual circumstance, under the assumption that a court can separate valid from invalid subrules or applications." *Hoye*, 653 F.3d at 857 (quotation marks and citation omitted). "An as-applied challenge does not implicate the enforcement of the law against third parties.... A successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Foti*, 146 F.3d at 635. The difference between a facial and as-applied challenge "lies only in whether all or only some of the statute's subrules (or fact-specific applications) are being challenged." *Hoye*, 653 F.3d at 635; *see also*, *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 331 (2010) (stating the distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court").

ATU asserts the Policy is both facially unconstitutional and unconstitutional as

applied to its proposed advertisement. (ECF No. 44 at 2). ATU's facial claim is based on STA's alleged interpretation of the Policy to ban union speech. (ECF No. 44 at 2). ATU argues the Policy is also unconstitutional as-applied because STA "engaged in an unreasonable, arbitrary and capricious" application of the Policy in rejecting ATU's proposed advertisement. (ECF No. 44 at 2). ATU requests the court to order STA "to run the substance of Plaintiff's proposed ad, with appropriate artistic modifications, and any similar ad promoting Plaintiff and the services it provides." (ECF No. 44 at 15).

ATU did not present evidence or suggest the Policy is unconstitutional in every application: ATU "takes no issue with the STA Policy regarding commercial advertising *as written*. Nor does Local 1015 challenge the 'Public Issue' prohibition *as written*." (ECF No. 44 at 11-12) (emphasis in original). Rather, ATU argues the Policy has been unreasonably interpreted to not allow union goods or services to be advertised. (ECF No. 44 at 12). The fact the facial challenge is premised on STA's interpretation of the Policy demonstrates counsel's conflation of the two separate types of challenges. Additionally, ATU does not seek to invalidate the entire Policy, only the portions or interpretations thereto that have been interpreted to prohibit it from advertising. Accordingly, the court construes ATU's claims as an as-applied challenge. The court notes this conclusion does not require a different standard for evaluating the merits of ATU's challenge. *See Hoye*, 653 F.3d at 857 (noting "the substantive legal tests used in the two challenges are invariant") (quotation marks and citation omitted).

**D.   "Public Issue"**

The Policy prohibits "[a]dvertising expressing or advocating an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues." (Ex. 1 at § II.B(13)).

STA asserts the court should first evaluate this issue because if STA reasonably determined the advertisement constituted a "Public Issue" then ATU's challenges to "Commercial and Promotional Advertising" and "Public Service Announcements" are

moot. (ECF No. 42 at 5). STA argues the evidence "unequivocally" showed the proposed advertisement fell within the definition of "Public Issue." (ECF No. 42 at 2). STA relies on Leighty's testimony wherein he admitted promoting the right to organize is an economic, political, and social issue, and admitted there is a public debate surrounding the right to work between labor unions and right to work organizations. (ECF No. 42 at 2-3).

ATU argues the proposed advertisement is not a "public issue" because it "does not express or advocate an opinion at all. It makes a statement of fact." (ECF No. 44 at 9-10). ATU also asserts the right to work movement is not equivalent to its proposed advertisement because the right to work movement "advocates for changes to the current state of the law." (ECF No. 44 at 10). Additionally, ATU contends STA cannot reasonable interpret this portion of the Policy "to mean that an advertiser cannot promote a commercial service if the advertised product or service itself is a matter of public debate." (ECF No. 44 at 10). ATU points out "virtually every product and service could be characterized in that manner" and such an interpretation makes the Policy "not sufficiently definite or objective to prevent arbitrary or discriminatory enforcement, and it is unconstitutional." (ECF No. 44 at 10).

To the extent STA's position suggests the prohibition applies to any advertisement touching on any issue having any level of public debate, such an interpretation is unreasonable. For most every good or service, there is some level of debate. Such an expansive view of the "Public Issue" prohibition would swallow the rest of the Policy so no advertisement would ever be allowed on STA buses. Leighty admitted, under leading questions on cross-examination, to certain facts. However, the court does not find such testimony is dispositive. The issue is whether **STA's** interpretation is reasonable.

There is evidence showing STA received public complaints over advertisements targeting specific grocery stores and urging customers to not shop there. The court declines to find whether the backlash over the Albertsons and Fred Meyer advertisements

constitutes a significant disruption, but such a finding is unnecessary. Those advertisements were materially different than ATU's proposed advertisement.

First, the Fred Meyer and Albertsons advertisements caused immediate backlash and publicity. The United Food and Commercial Workers' Union advertisement in the summer of 2016 contained essentially the same message ATU's proposed advertisement contained and those advertisements did not cause any complaints or public backlash. The evidence shows STA has not received complaints or backlash for running advertisements encouraging unionization.

Second, the Fred Meyer and Albertsons advertisements were specifically targeted at those grocery stores and argued their employment practices were wrong. The advertisements called for shoppers to take action against those grocery stores. ATU's advertisement, on the other hand, did not criticize any business or person or call for consumers to take their business elsewhere. The proposed ATU advertisement simply stated the fact that drivers had the right to organize and provided ATU's contact information. For these reasons, the court rejects STA's claim that the proposed advertisement was a "Public Issue" based on the Fred Meyer and Albertsons advertisements.

STA's reliance on the "right to work" movement to establish the public debate surrounding unions is also unpersuasive. STA presented no evidence suggesting any of those movements have attempted to advertise on STA buses, or establishing a nexus between ATU's advertisement and the right to work movement. The court does not and need not determine whether right to work advertisements would constitute "Public Issue" advertising under the Policy. STA's arguments are too speculative to warrant any deference to the decision to, at best, preemptively silence the debate by prohibiting ATU's advertisement.

The Seventh Day Adventist advertisement further illustrates ATU's proposed

advertisement was not a "Public Issue." Religion is specifically listed in the definition of "Public Issue," yet STA allowed the Church to run advertisements with its contact information and messages that were not explicitly religious. The fact the Seventh Day Adventist advertisement was run as a "Public Service Announcement" is immaterial because the "Public Issue" restriction applies to all advertisements. *See* (ECF No. 41 at 178:14-22). STA did not narrowly interpret the Policy in that instance where the advertisements as approved arguably touched on issues of public debate. Undoubtedly some people could be offended by any advertisement promoting a church, similarly to STA's position regarding unions. However, STA treated religion differently than it treated ATU. If STA could find a church advertisement that did not explicitly advocate religious beliefs to not be a "Public Issue," then it was unreasonable to treat ATU's proposed advertisement different. STA failed to provide a reasonable basis whereby it could allow a church to run an advertisement promoting itself without being a "Public Issue" while ATU could not run an advertisement promoting itself. While it was only mentioned in passing at trial, an advertisement run by Planned Parenthood on STA buses could support this conclusion for the same reasons.

The court finds STA did not reasonably interpret the "Public Issue" portion of the Policy when it applied that prohibition to the proposed ATU advertisement stating various transportation employees have the right to unionize. STA did not present credible evidence to establish the proposed advertisement would cause a significant disruption of services akin to the inflammatory advertisements at issue in other similar cases. *See Seattle Mideast*, 781 F.3d at 494-95 (addressing advertisements stating "ISRAELI WAR CRIMES YOUR TAX DOLLARS AT WORK," "PALESTINIAN WAR CRIMES YOUR TAX DOLLARS AT WORK," and "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THE SAVAGE, SUPPORT THE CIVILIZED MAN. Support Israel, Defeat Islamic Jihad"); *Massachusetts Bay*, 781 F.3d at 575-76 (addressing advertisements stating "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THE

SAVAGE, SUPPORT THE CIVILIZED MAN. SUPPORT ISRAEL," "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THOSE ENGAGED IN SAVAGE ACTS, SUPPORT THE CIVILIZED MAN. DEFEAT VIOLENT JIHAD SUPPORT ISRAEL," and "IN ANY WAR BETWEEN THE CIVILIZED MAN AND THE SAVAGE, SUPPORT THE CIVILIZED MAN. DEFEAT VIOLENT JIHAD SUPPORT ISRAEL."); *Suburban Mobility*, 698 F.3d at 888 (addressing an advertisement stating "Fatwa on your head? Is your family or community threatening you? Leaving Islam? Got Questions? Get Answers! RefugefromIslam.com").

There was insufficient evidence presented at trial to show STA reasonably determined the proposed advertisement was a "Public Issue." Accordingly, the court does not resolve this issue in STA's favor and further examination of the Policy is necessary.

**E.    "Commercial and Promotional Advertising"**

According to the Policy, "[c]ommercial and promotional advertising promotes or solicits the sale, rental, distribution, or availability of goods, services, food, entertainment, events, programs, transaction, donations, products or property for commercial purposes or more generally promotes an entity that engages in such activity." (Ex. 1 at § II.A(1)).

STA admits "[w]hether an ad promoting the right to organize qualifies as 'commercial' is a closer question." (ECF No. 42 at 10). Nonetheless, STA argues "this is an issue of first impression on which reasonable minds might disagree." (ECF No. 42 at 10). STA asserts it was reasonable to conclude the proposed advertisement did not meet the definition of "Commercial and Promotional Advertising" because it did "not propose a commercial transaction and is several steps removed from ATU forming a labor union and collecting dues payments." (ECF No. 42 at 10-11). STA has also cited to its Trial Brief which discussed this issue at greater length. *See* (ECF No. 36 at 10-15) (discussing *Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998)).

STA asserts it interprets its Policy "to require that an advertisement propose a

commercial transaction." (ECF No. 36 at 11). STA's argument relies heavily on *Children of the Rosary*. That case, however, is distinguishable. In *Children of the Rosary*, the City of Phoenix rejected a proposed advertisement for its buses which stated "'Before I formed you in the womb, I knew you'–God Jeremiah 1:5. Purchase this message as a bumpersticker for your vehicle!" 154 F.3d at 975. Phoenix had an advertising policy which limited bus advertising to "speech which proposes a commercial transaction." (*Id.*). STA's Policy is not so narrowly worded. Under the plain language of the STA Policy, an advertisement may promote the availability of goods or services. Under the broadest language of the Policy, an advertisement need only "promote[] an entity that engages in such [commercial] activity." STA's effort to align this case with the facts of *Children of the Rosary* is unpersuasive. Instead, *Children of the Rosary* serves to further show the unreasonableness of STA's interpretation.

Had STA crafted a narrow policy, it could reasonably exclude advertisements that do not propose a commercial transaction. It has not crafted a narrow policy, and as such, the Policy provides no basis for the interpretation STA now urges this court to accept as reasonable. The fact ATU is organized under the Internal Revenue Service code as a non-profit does not *ipsa facto* mean ATU only engages in non-commercial activity. STA admits ATU is engaged in interstate commerce. (ECF No. 36 at 10). Additionally, the Policy is not limited to advertisements which specifically relate to commercial activity, provided the advertisement promotes an entity that engages in commercial activity as defined in the Policy. The fact ATU's proposed advertisement may be "several steps removed" from ATU receiving monetary benefit does not take it outside the definition of "Commercial and Promotional Advertising" in the Policy. The advertisement generally promotes ATU as a resource for drivers seeking to form a labor union. If drivers from one of the named companies contacted ATU, ATU would provide help which may lead to the formation of a labor union. *See* (ECF No. 41 at 84:25-8). Even if the activity of recruiting and forming new labor unions were not deemed commercial, the proposed advertisement

fell within the Policy's definition of "Commercial and Promotional Advertising" because it promoted ATU, an entity that engages in commercial activity. Under STA's Policy, ATU's proposed advertisement was "Commercial and Promotional Advertising" and the court rejects STA's position on this issue.

**F.   "Public Service Announcement"**

The court notes the parties presented scant evidence on the issue of whether the Policy's limitation of "Public Service Announcements" to 501(c)(3) organizations is reasonable. Plaintiff's counsel conceded ATU did not propose to run a "Public Service Announcement" advertisement. (ECF No. 41 at 20:12-16). Because of the court's discussion and findings above, it is unnecessary to reach this issue. The court declines to make any finding regarding the reasonableness of this portion of the Policy or STA's interpretation thereto.

## IV.   Conclusions of Law

Based on the foregoing discussion, the court concludes STA did not engage in viewpoint discrimination and ATU did not present a facial challenge to the Policy. In evaluating ATU's as-applied challenge, the court finds ATU's proposed advertisement did not constitute "Public Issue" advertising as defined in the Policy. STA's determination to the contrary was an unreasonable interpretation of the Policy. The court finds ATU's proposed advertisement was "Commercial and Promotional Advertising" as defined in the Policy and STA's determination to the contrary was an unreasonable interpretation of the Policy. Because of these conclusions of law, the court does not make any conclusions regarding the "Public Service Announcement" portion of the Policy.

## V.   Conclusion

Based on all of the forgoing Findings Of Fact and Conclusions Of Law, the court finds STA violated ATU's First Amendment rights by rejecting the proposed advertisement. In the event STA continues its advertising program, STA shall not reject this proposed advertisement. The court makes no determination on other hypothetical

advertisements.

**IT IS HEREBY ORDERED**:

Within ten days from the filing of this Opinion, the parties shall submit briefs, not to exceed ten (10) pages, as to the relief sought by and to which ATU is entitled.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Opinion and furnish copies to counsel.

Dated September 28, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE